**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Smith v. May,* **Slip Opinion No. 2020-Ohio-61.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-61

SMITH, APPELLANT, *v.* MAY,[1] WARDEN, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Smith v. May,* **Slip Opinion No. 2020-Ohio-61.]**

*Habeas corpus—R.C. 2152.12(G)—Challenge based on juvenile court's alleged failure to fully comply with all procedural requirements for transferring petitioner's case from juvenile court to common pleas court—Common pleas court in petitioner's criminal case did not lack subject-matter jurisdiction—Court of appeals' denial of writ of habeas corpus affirmed— Gaskins v. Shiplevy, 74 Ohio St.3d 149, 656 N.E.2d 1282 (1995), overruled.*

(No. 2018-0369—Submitted August 6, 2019—Decided January 14, 2020.)

APPEAL from the Court of Appeals for Richland County, No. 17 CA 37, 2018-Ohio-300.

_____

**Per Curiam.**

1. Under S.Ct.Prac.R. 4.06(B), Harold May, the current warden of Richland Correctional Institution, is automatically substituted for David Marquis, the former warden, as a party to this action.

{¶ 1} In 2012, four delinquency complaints were filed in juvenile court against appellant, Ja'Relle Smith, who was then 16 years old. Based on his age and the severity of the charges, the cases were transferred to adult court, where Smith was convicted of five felony counts and sentenced to an aggregate prison term of 16 years. In 2017, he filed a pro se petition for a writ of habeas corpus in the Fifth District Court of Appeals alleging that the juvenile court had not fully complied with the procedures for transferring jurisdiction to the adult court, because it had not timely notified his father of a hearing in one of the juvenile-court cases that led to the transfer of some of the charges. The court denied the writ, and Smith appeals here as of right.

{¶ 2} We appointed counsel for Smith and ordered supplemental briefing regarding whether the juvenile court's noncompliant notice was a defect that deprived the adult court of subject-matter jurisdiction. We hold that the failure to provide timely notice did not prevent the juvenile court from transferring subject-matter jurisdiction to the adult court. We therefore affirm the court of appeals' judgment.

## I. THE BINDOVER STATUTE

{¶ 3} Under R.C. 2151.23(A)(1), "[t]he juvenile court has exclusive original jurisdiction * * * [c]oncerning any child who on or about the date specified in the complaint, indictment, or information is alleged * * * to be * * * a delinquent * * * child." But if a child[2] is old enough and is alleged to have committed an act that would be a felony if committed by an adult, the juvenile court may (or may be required to) transfer its jurisdiction to the appropriate adult court for criminal prosecution. *See* R.C. 2152.10(A) (eligibility for mandatory transfer) and 2152.10(B) (eligibility for discretionary transfer). This transfer occurs through a statutory process that "is generally referred to as a bindover procedure." *State v. Wilson*, 73 Ohio St.3d 40, 43, 652 N.E.2d 196 (1995).

---

2. As relevant here, "child" is generally defined in both R.C. 2151.011(B)(6) and 2152.02(C)(1) as a person under age 18.

{¶ 4} The procedural requirements for bindover are provided in R.C. 2152.12. In general terms, if a child appears to be eligible for mandatory transfer, the juvenile court must conduct a hearing to determine whether he meets the eligibility criteria and whether there is probable cause to believe that he committed the act charged. *See* R.C. 2152.12(A)(1); *see also* Juv. R. 30(A). When a child appears to be eligible for discretionary transfer, the juvenile court, in addition to determining eligibility and probable cause, must determine whether the child is "amenable to care or rehabilitation within the juvenile system" and whether "the safety of the community * * * require[s] that the child be subject to adult sanctions." R.C. 2152.12(B)(3).

{¶ 5} Unless the alleged juvenile offender is taken into custody or apprehended after age 21, he "shall [not] be prosecuted as an adult" for the offense "unless [he] has been transferred as provided in" R.C. 2152.12(A) or (B). R.C. 2152.12(H). Such a transfer "abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint, and, upon the transfer, * * * the case then shall be within the jurisdiction of the court to which it is transferred." R.C. 2152.12(I).

{¶ 6} This appeal involves the bindover statute's notice provision, R.C. 2152.12(G), which provides that a juvenile court "shall give notice in writing of the time, place, and purpose of any hearing held pursuant to division (A) or (B) of this section to the child's parents, guardian, or other custodian and to the child's counsel at least three days prior to the hearing."

## II. FACTS AND PROCEDURAL HISTORY

### A. Juvenile and criminal proceedings

{¶ 7} In 2012, the state filed four delinquency complaints[3] against Smith in Summit County Juvenile Court related to three different robberies. Because each of

---

3. A fifth delinquency complaint filed by the state is not relevant to this appeal.

the charged offenses was a "category two offense" involving a firearm and Smith was 16 years old at the time, he appeared to be eligible for mandatory transfer to adult court under R.C. 2152.10(A)(2). *See also* R.C. 2152.02(BB) (defining "category two offense").

{¶ 8} The juvenile court held a hearing on three of the delinquency complaints on March 22, 2012. Smith's father was present at that hearing. At the hearing, Smith waived his right to a probable-cause hearing and stipulated to findings of probable cause in each case. The juvenile court found that Smith's cases were subject to mandatory transfer and transferred the cases to the general division of the Summit County Court of Common Pleas.

{¶ 9} The juvenile court held a hearing on the fourth delinquency complaint on March 27, 2012. Although R.C. 2152.12(G) required the court to give written notice of the hearing to Smith's father at least three days in advance, the court sent him notice only one day in advance, and Smith's father did not attend the hearing. When the juvenile court inquired about his father's absence, Smith indicated that he was aware of his right to have his father present after discussing that right with his attorney and he agreed to proceed without him. Then Smith waived his right to a probable-cause hearing and stipulated to a finding of probable cause. The juvenile court then transferred the fourth case to the adult court.

{¶ 10} In April 2012, a grand jury indicted Smith on five counts of aggravated robbery, three counts of aggravated burglary, two counts of kidnapping, and one count of burglary. Each count included a firearm specification. Smith later pleaded guilty to three counts of aggravated robbery (one with a firearm specification), one count of aggravated burglary, and one count of kidnapping. The court dismissed the remaining counts and specifications and imposed an aggregate prison sentence of 16 years.

{¶ 11} The Ninth District Court of Appeals affirmed Smith's convictions and sentences. *State v. Smith*, 9th Dist. Summit No. 26804, 2015-Ohio-579.

**B. Habeas proceedings**

{¶ 12} In 2017, Smith filed a petition for a writ of habeas corpus in the Fifth District Court of Appeals against David Marquis, then the warden of Richland Correctional Institution. Smith primarily argued that the common pleas court lacked jurisdiction to convict him because the juvenile court had not provided timely notice of the March 27, 2012 hearing to his father as required under R.C. 2152.12(G). The court of appeals denied the petition. 2018-Ohio-300, ¶ 11. The court concluded that R.C. 2152.12(G) did not apply to the March 27 hearing because, in its view, it was a pretrial hearing, not a bindover hearing. *Id.* at ¶ 9. It also determined that Smith had an adequate remedy at law because he could have challenged the bindover in his direct appeal of the common pleas court's judgment. *Id.* at ¶ 10.

{¶ 13} After Smith appealed to this court, we appointed counsel for him and ordered the parties to file supplemental briefs on this question: "Does the procedural error in the juvenile-bindover proceeding create a jurisdictional defect that deprived the general division of the common pleas court of subject-matter jurisdiction?" 155 Ohio St.3d 1418, 2019-Ohio-1315, 120 N.E.3d 865.

### III. ANALYSIS

**A. Legal standard**

{¶ 14} "A writ of habeas corpus lies in certain extraordinary circumstances where there is an unlawful restraint of a person's liberty and there is no adequate remedy in the ordinary course of law." *Pegan v. Crawmer*, 76 Ohio St.3d 97, 99, 666 N.E.2d 1091 (1996). In general, habeas relief is available when the sentencing court lacked subject-matter jurisdiction. *Ellis v. McMackin*, 65 Ohio St.3d 161, 162, 602 N.E.2d 611 (1992); *see also* R.C. 2725.05.

**B. Applicability of R.C. 2152.12(G)**

{¶ 15} The juvenile court did not comply with R.C. 2152.12(G). While the statute requires that written notice be given at least three days in advance, the juvenile court sent Smith's father notice only one day before the March 27 hearing. But the

warden argues that R.C. 2152.12(G) did not apply to the March 27 hearing. He says that it was merely a "pretrial hearing," not a "probable cause hearing" or an "amenability hearing" under R.C. 2152.12(A) or (B). The court of appeals reached the same conclusion. *See* 2018-Ohio-300 at ¶ 9.

{¶ 16} We reject this narrow reading of R.C. 2152.12(G), which does not refer to a "probable cause hearing" or an "amenability hearing" but instead to "any hearing held pursuant to division (A) or (B) of this section." The juvenile court held the March 27 hearing to consider the state's motion to relinquish jurisdiction—a motion the state had filed pursuant to R.C. 2152.12. As a result of that hearing, the juvenile court found that "transfer of this matter to the General Division is mandatory pursuant to" R.C. 2152.10 and 2152.12. Clearly, the March 27 hearing was "held pursuant to" R.C. 2152.12(A), and R.C. 2152.12(G) applied.

## C. The subject-matter-jurisdiction question

{¶ 17} Smith alleges that he is entitled to habeas relief because the juvenile court did not conduct "a proper bindover procedure." In *Gaskins v. Shiplevy*, 74 Ohio St.3d 149, 151, 656 N.E.2d 1282 (1995) ("*Gaskins I*"), this court held that a petition that alleges that a bindover was improper "state[s] a potentially good cause of action in habeas corpus." This court stated that "without a proper bindover procedure * * *, a juvenile court's jurisdiction is exclusive and cannot be waived." *Id*. And without a valid transfer to adult court, a juvenile's conviction and sentence are void, and habeas is "an appropriate remedy despite the availability of appeal." *Id*.

{¶ 18} But more recently, we have held that key parts of the bindover procedure may be waived. *See State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 21. And we have reviewed for plain error when a juvenile failed to object at a bindover hearing to a juvenile court's procedural error. *See State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 49. These cases implicitly provide, contrary to *Gaskins I*, that noncompliance with a statutory bindover requirement does not prevent a juvenile court from transferring its subject-

matter jurisdiction and does not render an adult court's judgment void. We must decide whether to adhere to *Gaskins I* in view of this more recent caselaw.

### 1. Gaskins I*'s tenuous foundation*

{¶ 19} In *Gaskins I*, a prison inmate brought a habeas claim in a court of appeals, initially raising a constitutional challenge to his criminal conviction. *Gaskins I* at 149. That claim was dismissed as clearly meritless. *Id.* at 150. But the inmate also had asked the court of appeals for leave to amend his petition to add an improper-bindover claim based on the juvenile court's purported failure to have him undergo mental and physical examinations as required by a statute that was in effect at that time. *Id.* at 149-150. The court of appeals did not allow the inmate to amend his petition. *Id.* at 150. On appeal, we held that the court of appeals should have allowed the amendment and considered the bindover claim. *Id.* We stated that "without a proper bindover procedure * * *, a juvenile court's jurisdiction is exclusive and cannot be waived." *Id.* at 151, citing *Wilson*, 73 Ohio St.3d 40, 652 N.E.2d 196, at paragraphs one and two of the syllabus.

{¶ 20} The central holding of *Gaskins I*—that a juvenile offender may collaterally attack an adult criminal conviction in a habeas action based on a bindover error—has been repeated by this court numerous times. For example, in *Johnson v. Timmerman-Cooper*, 93 Ohio St.3d 614, 617, 757 N.E.2d 1153 (2001), we granted a writ of habeas corpus because the bindover was substantively invalid and, as a result, the juvenile "had not been lawfully transferred to [the adult] court." In other cases, we have acknowledged the rule of *Gaskins I* but found it to be inapplicable under the facts of the case. *See, e.g., State ex rel. Fryerson v. Tate*, 84 Ohio St.3d 481, 484-485, 705 N.E.2d 353 (1999); *Agee v. Russell*, 92 Ohio St.3d 540, 544, 751 N.E.2d 1043 (2001). And in *State v. Golphin*, 81 Ohio St.3d 543, 692 N.E.2d 608 (1998), a case concerning a defendant's appeal of his adult-court conviction (therefore not involving a collateral attack), we applied *Gaskins I* and held that the juvenile court had "failed to accomplish a legal transfer of its jurisdiction" and that the criminal

prosecution in adult court was "void *ab initio*" because the juvenile court had failed to provide for a physical examination of the juvenile, *id.* at 547.

{¶ 21} *Gaskins I*'s foundation was *Wilson*, a case in which the state prosecuted a juvenile in adult court under the mistaken belief that he was an adult when he committed his offense. In fact, Wilson was a juvenile when he committed the offense, and he was never bound over from a juvenile court. *Wilson* at 42, 44. Because Wilson had been deprived of a bindover proceeding altogether, this court agreed with the court of appeals that the adult court lacked jurisdiction. We held that "[a]bsent a proper bindover procedure * * *, the juvenile court has the exclusive subject matter jurisdiction over any case concerning a child who is alleged to be a delinquent." *Id.* at paragraph one of the syllabus. And "[b]ecause the general division of the court of common pleas lacked subject matter jurisdiction to convict Wilson, the judgment of conviction against him was void *ab initio*." *Id.* at 44. *See also State ex rel. Harris v. Anderson*, 76 Ohio St.3d 193, 195, 667 N.E.2d 1 (1996) (habeas case involving an allegedly mistaken belief that a child was an adult). Significantly, the *Wilson* court recognized that the General Assembly had compelled this result—the bindover statute expressly provided that " '*[a]ny prosecution that is had in a criminal court on the mistaken belief that the child was eighteen years of age or older at the time of the commission of the offense shall be deemed a nullity.*' " (Emphasis added in *Wilson*.) *Wilson* at 44, quoting former R.C. 2151.26(E), Am.Sub.H.B. No. 27, 144 Ohio Laws Part II, 2745, 2747 (that provision, with nonsubstantive differences, is now R.C. 2152.12(H)).

{¶ 22} *Gaskins I* significantly extended *Wilson*'s holding. The problem in *Wilson* was that a juvenile-court proceeding had never happened at all. The state had not used "the only method by which a juvenile court may relinquish its exclusive original jurisdiction concerning a delinquent child," *Wilson*, 73 Ohio St.3d at 44, 652 N.E.2d 196. That is quite different from *Gaskins I*, in which the subject-matter

jurisdiction of a juvenile court was invoked, a bindover proceeding was held, and subject-matter jurisdiction ostensibly was transferred to an adult court.

{¶ 23} What is more, *Gaskins I* abandoned *Wilson*'s analytical focus on statutory language. The *Wilson* court rightly allowed the legislature to determine the sentencing court's subject-matter jurisdiction. *See* Article IV, Section 4(B) of the Ohio Constitution ("The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters * * * *as may be provided by law*" [emphasis added]). The *Gaskins I* court, in contrast, did not examine whether the bindover statute expressly made the juvenile court's error jurisdictional. This court in *Gaskins I* simply applied *Wilson*'s broadly worded holding, despite the clear differences between the two cases.

{¶ 24} Notably, the parties both seem to accept that *Wilson*'s focus on the statutory text was correct; they both cite United States Supreme Court cases that ultimately ask whether the legislature has "clearly state[d]" that a particular statutory requirement is jurisdictional, *e.g.*, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-516, 126 S.Ct. 1235, 163 L.E.2d 1097 (2006). Indeed, we have used the same approach when deciding whether statutory requirements in other contexts are jurisdictional. *See Pryor v. Dir., Dept. of Job & Family Servs.*, 148 Ohio St.3d 1, 2016-Ohio-2907, 68 N.E.3d 729, ¶ 14, 16; *Nucorp, Inc. v. Montgomery Cty. Bd. of Revision*, 64 Ohio St.2d 20, 22, 412 N.E.2d 947 (1980).

### 2. *The erosion of* Gaskins I

{¶ 25} When Gaskins's case returned to this court after our remand, we abandoned *Gaskins I*'s main premise that a noncompliant bindover procedure renders the resulting adult criminal conviction void. Gaskins had alleged that the juvenile court had failed to have him undergo mental and physical examinations, which were required by statute at the time. *Gaskins I*, 74 Ohio St.3d at 150-151, 656 N.E.2d 1282. On remand, the warden presented evidence showing that Gaskins had affirmatively waived his right to those examinations. *Gaskins v. Shiplevy*, 76 Ohio

St.3d 380, 381, 667 N.E.2d 1194 (1996) ("*Gaskins II*"). In *Gaskins I*, this court had viewed all the requirements of the bindover procedure as jurisdictional (and thus not waivable). *Gaskins I* at 151. But *Gaskins II* held that the evidence of waiver showed that there had been "full compliance with the bindover procedure," *id.* at 382, thus signaling that the mandates of the bindover statute were not jurisdictional after all.

{¶ 26} Just last year, we validated *Gaskins II*. *See Johnson v. Sloan*, 154 Ohio St.3d 476, 2018-Ohio-2120, 116 N.E.3d 91, ¶ 16-17. And in another recent case, we held that a juvenile may waive the right to an amenability hearing, which is central to any discretionary bindover procedure. *D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, at ¶ 21. This all shows that a bindover procedure is "proper" even when the juvenile waives R.C. 2152.12's mandatory requirements. And if the requirements are waivable, they are not jurisdictional. *See Wilson*, 73 Ohio St.3d 40, 652 N.E.2d 196, at paragraph two of the syllabus ("The exclusive subject matter jurisdiction of the juvenile court cannot be waived"); *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 10 ("Because subject-matter jurisdiction involves a court's power to hear a case, the issue can never be waived or forfeited and may be raised at any time").

{¶ 27} While *Gaskins II* undermined *Gaskins I* by concluding that a juvenile may waive the bindover procedure's statutory mandates, other cases have undermined *Gaskins I* by concluding that a juvenile may forfeit them. In *Morgan*, we held that R.C. 2151.281(A)(1) requires a juvenile court to appoint a guardian ad litem at an amenability hearing when the juvenile's parents are deceased and there is no guardian or legal custodian. 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, at ¶ 28. But we held that noncompliance with the statute is subject to plain-error review. *Id.* at ¶ 49. We also reviewed for plain error in *State v. Martin*, another case in which a bindover error had occurred. 154 Ohio St.3d 513, 2018-Ohio-3226, 116 N.E.3d 127, ¶ 27. In these cases, we did not view an improper bindover procedure as a fundamental defect that prevented the juvenile court from transferring subject-

matter jurisdiction to an adult court. Indeed, in *Martin*, we distinguished *Wilson*, noting that the juvenile "was not deprived of R.C. 2152.12 bindover proceedings altogether." *Martin* at ¶ 25.

*3. We overrule* Gaskins I

{¶ 28} *Gaskins I* wrongly extended *Wilson*'s holding with no analysis reconciling the significant differences between the two cases. Specifically, unlike *Wilson*, *Gaskins I* did not involve a statutory provision expressly depriving the adult court of jurisdiction. The *Gaskins I* court was wrong in adopting the broad rule that *any* deviation from the statutory bindover procedure renders the adult court's judgment void. The *Gaskins I* court should have examined the statute's text concerning the *specific* error alleged, to determine whether the statute clearly established a barrier to the adult court's subject-matter jurisdiction. *See Pryor*, 148 Ohio St.3d 1, 2016-Ohio-2907, 68 N.E.3d 729, at ¶ 14. That error has led to significant confusion about when a defendant can challenge a procedural defect in a juvenile-court bindover proceeding, and it necessitates this court's clarification.

{¶ 29} Juveniles facing bindover to an adult court maintain the right to object to a juvenile court's noncompliance with bindover procedures and the right to appeal from any error *in the ordinary course of law*. *See In re D.H.*, 152 Ohio St.3d 310, 2018-Ohio-17, 95 N.E.3d 389, ¶ 19. However, we overrule *Gaskins I*'s holding that *any* deviation from the statutory bindover procedure creates a potentially good cause of action in habeas corpus. Deviation from a bindover procedure gives rise to a potentially valid habeas claim only if the applicable statute clearly makes the procedure a prerequisite to the transfer of subject-matter jurisdiction to an adult court. *See Pryor*, 148 Ohio St.3d 1, 2016-Ohio-2907, 68 N.E.3d 729, at ¶ 14.

*4. Smith's sentencing court had subject-matter jurisdiction*

{¶ 30} No language in R.C. 2152.12(G) suggests that the provision of notice is a prerequisite to the transfer of subject-matter jurisdiction to an adult court. Smith's arguments to the contrary are unpersuasive.

**{¶ 31}** Initially, Smith focuses on R.C. 2152.12(G)'s mandatory language—"[t]he court shall give notice." According to Smith, treating the notice requirement as waivable or subject to forfeiture renders it nonmandatory and ineffective. But "not every requirement, even if mandatory, is jurisdictional in nature." *Pryor* at ¶ 15; *see also Martin*, 154 Ohio St.3d 513, 2018-Ohio-3226, 116 N.E.3d 127, at ¶ 27 ("R.C. 2152.021's mandates are not jurisdictional requirements"); *Gonzalez v. Thaler*, 565 U.S. 134, 146, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012) ("calling a rule nonjurisdictional does not mean that it is not mandatory or that a timely objection can be ignored"); *Union Pacific RR. Co. v. Brotherhood of Locomotive Engineers & Trainmen Gen. Commt. of Adjustment, Cent. Region*, 558 U.S. 67, 81, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009), quoting *Arbaugh*, 546 U.S. at 510, 126 S.Ct. 1235, 163 L.E.2d 1097 ("Not all mandatory 'prescriptions, however emphatic,' " are properly classified as " 'jurisdictional' "). Holding that R.C. 2152.12(G) is nonjurisdictional would not mean that notice is nonmandatory. A juvenile still may object to noncompliance and, even absent an objection, may raise an issue of noncompliance on direct appeal following conviction. *See Golphin*, 81 Ohio St.3d 543, 692 N.E.2d 608. But it would mean that a criminal offender may not collaterally attack a final judgment years after the fact.

**{¶ 32}** Smith next points to the notice requirement's inclusion within R.C. 2152.12, the statute providing the exclusive means for the transfer of subject-matter jurisdiction. To be sure, this court has in some cases viewed R.C. 2152.12's mandatory requirements as prerequisites to the transfer of subject-matter jurisdiction. But in view of our decision to overrule *Gaskins I*, Smith's argument has little force, because he does not consider whether R.C. 2152.12(G), in particular, clearly establishes a barrier to the transfer of subject-matter jurisdiction.

**{¶ 33}** Finally, Smith emphasizes that the statutory notice requirement is a due-process protection. Invoking language used in some United States Supreme Court cases, he contends that such an important constitutional protection cannot be

12

treated as a mere "claim-processing rule," *see, e.g.*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010). This argument misses an important fact. We have held that a juvenile may waive other key parts of the bindover procedure, such as an amenability hearing. *D.W.*, 133 Ohio St. 3d 434, 2012-Ohio-4544, 978 N.E.2d 894, at ¶ 21. In support of that holding, we explained that "[e]ven though '[t]here is a presumption against the waiver of constitutional rights,' an individual can still waive his constitutional rights as long as the waiver is made knowingly and intelligently and is an intentional relinquishment of a known right." *Id.* at ¶ 24, quoting *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). Smith has not shown why his waiver of R.C. 2152.12(G)'s protections—even if they are constitutional in character—was not permissible.

**{¶ 34}** Because R.C. 2152.12(G) does not clearly make the provision of notice a jurisdictional barrier, Smith's sentencing court did not lack subject-matter jurisdiction.

### D. Smith had an adequate remedy at law

**{¶ 35}** Finally, we emphasize that Smith had an adequate remedy at law. He could have objected to the juvenile court's failure to give his father timely notice, and if the court overruled his objection, he could have appealed the ruling in his appeal from his criminal convictions. But he chose instead to waive his right to have his father present at the hearing. He thus gave up his right to complain of the juvenile court's noncompliance with R.C. 2152.12(G). *See State v. Fitzgerald*, 9th Dist. Summit No. 23072, 2007-Ohio-701, ¶ 8 ("Where a party has affirmatively waived an objection * * *, the error may not be asserted on appeal even if it does amount to plain error"). We therefore affirm the court of appeals' denial of the writ of habeas corpus.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion joined by DEWINE, J.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 36} Because appellant, Ja'Relle Smith, has not demonstrated that he is entitled to the writ of habeas corpus, I concur with the majority's affirmance of the Fifth District Court of Appeals' judgment denying the requested writ. I also agree that it is time to revisit our caselaw treating "an improper bindover procedure," majority opinion at ¶ 27, as a jurisdictional defect for which habeas relief may be available and to clarify that a procedural error in conducting a bindover hearing does not deprive the general division of the common pleas court of subject-matter jurisdiction over a case that has been transferred from the juvenile court. However, because my analysis for determining whether an improper bindover procedure affects the subject-matter jurisdiction of the common pleas court differs from that of the majority, I concur in judgment only.

{¶ 37} Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11-12, 34. It is a " 'condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void.' " *Pratts* at ¶ 11, quoting *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998). "A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19. Rather, the focus is on whether the forum itself is competent to hear the controversy. 18A Wright, Miller & Cooper, *Federal Practice and Procedure*, Section 4428, 6 (3d Ed.2017) ("Jurisdictional analysis should be confined to the rules that actually allocate judicial authority among different courts").

{¶ 38} "Article IV, Section 4(B) of the Ohio Constitution grants exclusive authority to the General Assembly to allocate certain subject matters to the exclusive original jurisdiction of specified divisions of the courts of common pleas." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 2. The General Assembly exercised that power in enacting R.C. 2151.23(A)(1), which grants juvenile courts exclusive subject-matter jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult. R.C. 2152.12 establishes an exception to that rule, authorizing a juvenile court to relinquish its exclusive jurisdiction in certain cases involving a delinquent child and to transfer a case to the general division of the common pleas court. And once a juvenile court relinquishes jurisdiction, "[t]he transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint, and, upon the transfer, all further proceedings pertaining to the act charged shall be discontinued in the juvenile court, and the case then shall be within the jurisdiction of the court to which it is transferred." R.C. 2152.12(I).

{¶ 39} It is therefore within the subject-matter jurisdiction of a juvenile court to transfer a case and within the subject-matter jurisdiction of the general division of the common pleas court to receive it.

{¶ 40} " ' Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, "* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred." ' " (Ellipsis sic.) *Pratts*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, at ¶ 12, quoting *State ex rel. Pizza v. Rayford*, 62 Ohio St.3d 382, 384, 582 N.E.2d 992 (1992), quoting *Sheldon's Lessee v. Newton*, 3 Ohio St. 494, 499 (1854). And when a specific action is within a court's subject-matter jurisdiction, any error in the exercise of that jurisdiction renders the court's judgment voidable, not void. *Pratts* at ¶ 12, 21. Generally, a voidable judgment is not subject to collateral attack and therefore may not be challenged in habeas corpus as a

substitute for a direct appeal. *State v. Filiaggi*, 86 Ohio St.3d 230, 240, 714 N.E.2d 867 (1999); *State ex rel. Drexel v. Alvis*, 153 Ohio St. 244, 246, 91 N.E.2d 22 (1950).

{¶ 41} We have stated that "[a]bsent a proper bindover procedure * * *, the juvenile court has the exclusive subject matter jurisdiction over any case concerning a child who is alleged to be a delinquent." *State v. Wilson*, 73 Ohio St.3d 40, 652 N.E.2d 196 (1995), paragraph one of the syllabus. But *Wilson* did not involve an erroneous bindover procedure. Rather, because the state and the trial court had mistakenly believed that the offender was an adult at the time of the offense, no bindover had occurred at all, *see id*. at 44. For that reason, the juvenile court's exclusive subject-matter jurisdiction over the case had not been relinquished and the general division of the common pleas court's jurisdiction was never invoked.

{¶ 42} Cases following *Wilson*, however, confused the difference between a court lacking subject-matter jurisdiction and a court with jurisdiction but improperly exercising it. In *Gaskins v. Shiplevy*, we noted that a petition for a writ of habeas corpus asserting that a child had not been represented by counsel at his bindover hearing and had not been given the mental and physical examination required by Ohio's statutes at that time "stated a potentially good cause of action in habeas corpus, alleging, as it did, that the court of common pleas lacked jurisdiction over [the child] because of improper bindover." 74 Ohio St.3d 149, 151, 656 N.E.2d 1282 (1995). We reversed the court of appeals' dismissal of the petition and ordered the court to require a return and determine whether the bindover was improper.

{¶ 43} In *Johnson v. Timmerman-Cooper*, a juvenile court had ordered the mandatory bindover of a juvenile for prosecution in an adult court, despite the uncontroverted evidence in the case that the juvenile was in fact not subject to a mandatory bindover. 93 Ohio St.3d 614, 616-617, 757 N.E.2d 1153 (2001). This court held that the adult court "patently and unambiguously lacked jurisdiction to

convict and sentence [the juvenile] on the charged offenses when she had not been *lawfully transferred* to that court." (Emphasis added.) *Id*. at 617. Accordingly, "[t]he resulting conviction and sentence [were] void, and the availability of alternate remedies [did] not prevent issuance of the writ." *Id*. This court distinguished between "merely challenging the accuracy of the bindover entry" and "challenging the propriety of her bindover." *Id*.

{¶ 44} We adhered to both *Gaskins* and *Timmerman-Cooper* in *Johnson v. Sloan*, 154 Ohio St.3d 476, 2018-Ohio-2120, 116 N.E.3d 91, ¶ 14, in which we explained that "[i]f the juvenile court fails to comply with the mandatory requirements of the bindover statute, its purported transfer to adult court is ineffective and any judgment issued by the adult court is void."

{¶ 45} And in *Turner v. Hooks*, 152 Ohio St.3d 559, 2018-Ohio-556, 99 N.E.3d 354, we reviewed a court of appeals' holding that a juvenile court's failure to give notice of a bindover hearing to a child's legal custodian invalidated the transfer of the case to adult court and rendered the resulting judgment of conviction void for lack of subject-matter jurisdiction. We reversed the court of appeals' judgment, *id*. at ¶ 14, explaining that the notice that the juvenile court had provided to the child's biological mother satisfied R.C. 2152.12(G)'s requirement of written notice of the time, place, and purpose of a bindover hearing "to the child's parents, guardian, or other custodian." But nothing in our opinion disputed the underlying premise of the court of appeals' holding that a complete lack of notice to a custodian would render a resulting conviction void for lack of subject-matter jurisdiction, and it is telling that we considered the merits in *Turner* rather than concluding that a direct appeal of the conviction would have been an adequate remedy.

{¶ 46} As these cases show, and contrary to the majority's assertion, *Gaskins*, 74 Ohio St.3d 149, 656 N.E.2d 1282, is not an outlier that has been eroded by subsequent decisions. Nonetheless, I agree that it is time to overrule *Gaskins* and its progeny and clarify that an error in following the statutory procedures

prescribed for conducting a bindover hearing—including the notice required by R.C. 2152.12(G)—does not vitiate the subject-matter jurisdiction of the general division of the common pleas court over a case that has been transferred from the juvenile court. Rather, it is an error in the exercise of the juvenile court's jurisdiction that renders the transfer and resulting conviction voidable, not void.

{¶ 47} Here, the juvenile court allegedly conducted a bindover hearing without providing Smith's father with timely notice as required by R.C. 2152.12(G). But importantly, that alleged error would not have required reversal had Smith raised it in a direct appeal. Smith had already been bound over for prosecution in adult court for multiple felony offenses. The newest complaint alleged additional counts subject to a mandatory bindover: aggravated robbery, aggravated burglary, and kidnapping. The juvenile court sent Smith's father, who had attended the earlier hearing, notice of the second bindover hearing, but he did not appear. However, Smith expressly waived his father's presence and then stipulated to the existence of the facts that were necessary to transfer the case to adult court. Accordingly, any alleged error in that procedure was harmless, and a bindover to adult court on the new counts was a foregone conclusion. It strains reason to assume that an error that would not have required reversal in a direct appeal could support a collateral attack on an adult court's jurisdiction.

{¶ 48} In any case, the juvenile court had subject-matter jurisdiction to conduct the bindover proceeding and any failure to comply with R.C. 2152.12(G) did not divest it of that jurisdiction to transfer the case to adult court, because "once conferred, [jurisdiction] remains," *Pratts*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, at ¶ 34. The juvenile court therefore retained its exclusive jurisdiction over Smith's case until it journalized the bindover order, which "abate[d] the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint," R.C. 2152.12(I). The general division of the common pleas court then

had subject-matter jurisdiction over Smith's case and therefore had the authority to proceed to judgment.

{¶ 49} Any alleged procedural error in transferring Smith's case to adult court is at most an error in the exercise of jurisdiction that would render the affected convictions potentially voidable on direct appeal, not void. For this reason, Smith had an adequate remedy for purposes of challenging any errors in the bindover proceeding, and the court of appeals correctly denied his request for the writ of habeas corpus.

DEWINE, J., concurs in the foregoing opinion.

_____

Timothy Young, Ohio Public Defender, and Charlyn Bohland and Timothy B. Hackett, Assistant Public Defenders, for appellant.

Dave Yost, Attorney General, and Jerri L. Fosnaught, Assistant Attorney General, for appellee.

_____